No. 14,646.

LATTING *v.* BROADMOOR HOTEL, INC. ET AL.

(98 P. [2d] 857)

Decided January 8, 1940.   Rehearing denied February 5, 1940.

Mr. BEN S. WENDELKEN, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. FRANK A. BRUNO, Assistant, Mr. CHESTER B. HORN, for defendants in error.

*In Department.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

A PROCEEDING before the Industrial Commission on a death claim. The claimant, surviving wife, was denied favorable award by the commission, and in an action in relation to the matter brought by her in the district court she suffered adverse judgment.

It appears that claimant and deceased were married in New York, April 25, 1901, and the resulting relationship continued to the time of the husband's death, June 25, 1938; that his death was due to an accident arising out of and in the course of his employment at the hotel operated by Broadmoor Hotel, Inc., one of defendants in error; that in 1906 the husband contracted tuberculosis, and in 1907 the family—a child having been born —moved to Colorado Springs in the interest of the husband's health; that for many months the husband was hospitalized at a sanitarium; that during the time his health was impaired, the wife supported the family by nursing, and when he had so far recovered as to accept light employment on a small wage, she continued to practice her profession as a nurse thereby supplementing his earnings; that in 1912 they purchased a small apartment house in Colorado Springs, which they operated together, and acquiring an additional house in 1919, thereafter they operated both; that in 1921, and for a

considerable period subsequently, the husband engaged in soliciting life insurance, and in the course thereof traveled over much of the state, but the apartment houses continued to be operated as before, the wife assuming greater responsibility in relation thereto in the husband's absence; that ultimately the apartment houses were lost through foreclosure, seemingly due to the untoward economic conditions prevailing in the late nineteen twenties and early nineteen thirties, but there was no evidence that that or any other fact caused domestic discord or otherwise worked any misunderstanding between the husband and wife; that in 1936 the husband obtained employment as night watchman and house officer at the Broadmoor hotel, Colorado Springs, which continued to the time of his death, but such employment was seasonal, that is to say, through the warmer months; that for the layoff period in the same years—winter season—the husband had like employment at the Biltmore hotel, Phoenix, Arizona; that when he was employed in Arizona the wife continued to live in Colorado Springs and keep house as usual, occasionally doing nursing as there was opportunity; that in the home thus conducted their son lived until his marriage in 1936, and to that home the husband and father customarily repaired when the requirements of his employment did not prevent; that when in Arizona the husband remitted sums of money to his wife and from his earnings at the Broadmoor she received a part from time to time. It further appears that one of the conditions of the husband's employment at Broadmoor was that he live near the hotel, and to that end he had a room or a small dwelling within easy call of the hostelry, and was so quartered at the time of his death; that his wife did not go to his lodging place at any time; that when he returned from Phoenix on the last occasion the wife, although living in the same place as formerly, was steadily employed as a nurse to an elderly woman, her hours in that activity being those of the husband's rest period,

or, otherwise expressed, their hours of employment, generally prevailing, were such that they rarely had opportunity for family communion, although at times, as she testified—and none denied—the husband would call to see her at the institution where her patient was domiciled, and less often he would call for her in a car and they would go for a ride. There was testimony that the husband consorted with another woman during the period of his last service in Phoenix, and that upon his return to the Broadmoor the same woman came also and shared with him the small quarters which he occupied near the hotel, and who claimed, as stated by one witness, that she was his sister; but there was no testimony that the wife knew of any such derelictions developed post her husband's death by those interested in preventing her recovery of compensation.

It was evident that the wife was not lacking in devotion to her stricken husband when the tragedy of 1906 robbed him of health and strength, and the burden of their support and that of a little son shifted to her less strong though capable shoulders, nor was she lacking in resourcefulness. They came to Colorado on faith that its favored clime would arrest the disease which had laid him low. She worked and supported her husband and son, as well as herself. When the husband grew stronger and could earn something, she did not immediately fold her hands, but continued to nurse for hire and supplement the family income. In time they acquired apartment house property, as already related, partly on deferred payments, as seems, for in the stress of conditions that overwhelmed many another, the property was lost to them; but together they worked in unquestioned harmony and devotion to support themselves and their son who was maturing under their loving care. Not a note of domestic discord, at any time, so far as appears, marred their lives. The wife and son attended the funeral of the departed, the expense of which was borne by the wife.

The issue as posed by the commission, was "whether the widow is entitled to compensation benefits, or was voluntarily separated and living apart from her husband at the time of his injury and death, and was not dependent in whole or in part on him for support." Resolving the question, the commission said it was "of the opinion and so finds that deceased and claimant were voluntarily separate and living apart from each other at the time of his injury and death, and for more than a year prior thereof, and that the claimant was not dependent in whole or in part upon him for support."

■ ■ The applicable statute reads: "For the purposes of this article the following described persons shall be conclusively presumed to be wholly dependent: (a) Wife, unless it be shown that she was voluntarily separated and living apart from the husband at the time of his injury or death and was not dependent in whole or in part on him for support." '35 C. S. A., c. 97, §331, S. L. '19, p. 720, §52. In the circumstances here, as we perceive, the claimant "is conclusively presumed, under the language of the act, to be wholly dependent, unless it shall be made to appear that she was (1) voluntarily separated and (2) living apart from her husband at the time of his death, and (3) was not dependent in whole or in part on him for support. The statute is in the conjunctive, and all three of these elements must be made to appear before the conclusive presumption of dependency of the wife can be overthrown." Mr. Justice Whitford, speaking for the court, in *Empire Zinc Co. v. Industrial Com.*, 71 Colo. 251, 206 Pac. 158. In the case just mentioned, the parties were married in 1901, in a foreign country, and the next year the husband came to America and never returned to his native land; nor did the wife ever come to America. The husband lost his life in 1920 while employed by the zinc company under circumstances entitling his dependent to compensation. His wife, proceeding as a dependent, and appealing from the far-off Czechoslovakian Republic, made claim for

compensation. Whatever the husband may have contributed to his wife prior thereto—which the opinion does not disclose—the commission found that from 1914 to the time of the husband's death (1920) he "made no contribution to the claimant." There, separation had existed almost from the beginning of the marital relation, nineteen years, and for the last six years of the husband's life the wife had received nothing from him; notwithstanding, we said she was entitled to an award of compensation. "There was no divorce or legal separation or estrangement," to quote further from Mr. Justice Whitford's opinion, "nor any intention on the part of either spouse not to maintain the marriage relationship. It is true the separation was an unusually protracted one. But the question does not turn on time or distance, but upon the nature and character of the absence and the intention of the parties respecting it." In the case before us there was no divorce, no legal separation, no estrangement. Assuming there were moral lapses on the part of the husband, emphasized after his death by his employer and the insurance carrier, there was no showing that either party wished to sever the marriage relation, and not a hint that the wife failed to observe every demand resting upon her wifely status. It is argued that the wife knew, or should be held to have known, of the husband's neglect and mode of life, and therefore voluntary separation obtained. Assuming full knowledge on her part, there was no evidence that she deigned to notice her husband's unfaithfulness, if such existed, while he lived, nor did she crucify his memory by speaking of it after his death. In such circumstances, as we perceive, justice is not served by permitting those statutorially appointed to pay compensation to the wife after the husband's death, to make his vices while living virtues in their behalf after his demise.

██ "Dependency rests upon an obligation of support and not upon the question as to whether that obligation is being discharged." *Industrial Com. v. Dell,*

104 O. St. 389, 135 N. E. 669, 34 A. L. R. 422. "The word 'voluntarily'," says the Tennessee Supreme Court, "was used to qualify the term 'living apart from the husband,' and used with deliberate purpose to include as presumptive dependents, wives whose husbands abandon them without cause *(Coletrane v. Ott,* 86 W. Va. 179, 103 S. E. 102), and who are charged with the legal and moral obligation of support *(Grolitz Co. v. Industrial Bond & Ind. Co.,* 278 Ill. 164, 115 N. E. 855); and to exclude only wives who intentionally, and uninfluenced by extraneous causes, were deliberately living apart from their husbands at the time of the accident." *Partee v. Memphis Concrete Pipe Co.,* 155 Tenn. 441, 295 S. W. 68. The Tennessee court added: "The petitioner did not desert her husband, and committed no act to justify his desertion of her. * * * She could have enforced the wife's claim to support, because the legal and moral obligation rested upon him." Whatever may be thought of the evidence concerning the husband's actions during the last year or so of life, and regardless of what motivated its introduction, or by whom, there was neither testimony nor circumstances to indicate that the wife was "voluntarily separated and living apart" from her husband at the time of his death, or that she was other than a good woman, burdened above many, and patient, perhaps beyond the spiritual conceptions of those not capable of her devotion and sacrifice.

The facts and pertinent statute considered, plaintiff in error was entitled to an award of compensation. That the trial court may so order, let the judgment be reversed.

Mr. Justice Bakke and Mr. Justice Burke concur.